Nelson, J.,
delivered the opinion of the Court.
This suit was brought in the Circuit Court of Hardeman county, on the 17th October, 1866. As the Code declares that “all contracts may be sued on *412 in the same form of action,” and that “ all wrongs may be redressed by an action on the facts of the case,” the style of the ancient forms of action is, in most cases, inapplicable, except where the old forms are adopted under the act of 1859, c. 33, p. 27. It may be termed in the language of the Code a civil action, and from the causes of action, or counts in the declaration, may be assimilated to the action of assumpsit. The plaintiffs claim thirty thousand dollars damages. Their causes of action are very briefly stated in the declaration, as being, 1 — For money loaned; 2 — For money due by account; 3 — For goods, wares and merchandize, sold and delivered; and, 4 — For the price of one hundred bales of cotton, “sold by defendants, as agents for plaintiffs, on the 1st November, 1861.” The defendants pleaded that they do not owe the plaintiffs, as alleged in their said declaration, and upon this plea issue was duly taken under the Code, secs. 2913, 2914. The plea is not accompanied by any statement of the real defenses as contemplated by sec. 2915.
It is insisted, for the plaintiffs, that their cause of action, as developed in the evidence, arose out of transactions between them and the defendants in relation to the purchase of cotton. Plaintiffs allege that they were engaged, in 1861-2, in the business of cotton spinning, at Huntsville, Alabama; that they employed the defendants, who were merchants at Sauls-bury, Tennessee, to purchase cotton for them and forward it to them at Florence,. Alabama, by the Memphis and Charleston Railroad; that, under this contract, *413 they received about one hundred bales, and furnished the defendants with funds to purchase ninety-two other bales of cotton, which were bought accordingly, but never delivered or accounted for. The defendants contend that they did not forward the ninety-two bales, in consequence of the destruction, by the Federal military authorities, of the bridges on the railroad across Bear Creek; that they notified the plaintiffs of this interruption to the transit of the cotton, and were instructed, in return, to store it at Saulsbury, which they did, in a house known as the Mini’s House, situated in a public place in the town; that the cotton remained there until about the 5th June, 1862, when it was removed, in wagons, and destroyed by Confederate soldiers under the command of Col. B. D. Harman, acting under certain general orders alleged to have been issued by Major-General Beauregard. In answer to this, it is alleged by the plaintiffs, that the wagons in which the cotton was hauled out were not pressed into service by or under the command of the Confederate soldiers, but were, in fact, hired by the defendants; that they caused all the cotton to be removed from the town, and' a part of it to be burned near the town, so as to create the impression among the soldiers and citizens that the whole was destroyed, while, in truth, only a bale or so was burned; that this was done eolorably, or, in the language of the witnesses, “to fool the cotton-burners;” and that nearly all the cotton was secreted, and ultimately sold by, or for the benefit of, the defendants. It is farther alleged that Ussery, for whose use this suit was brought, *414 purchased the claim of plaintiffs, and demanded the cotton or its proceeds, through his agent, Pitzer Miller, sometime in the year 1863, but that defendants refused to deliver it or account for its value.
The issue of fact thus made, seems to have been contested with an ardor and earnestness -proportionate to the magnitude of the cause and the important and delicate, not to say startling, inquiries involved in it. It has been submitted to three different juries, and on each occasion several days and a large part of the term appear to have been devoted to its investigation. Two mistrials were entered, and on the last trial a verdict and judgment were rendered for the defendant, from which the plaintiffs prosecute this appeal; and the case is now before us, in a record of more than seven hundred pages, made out with unusual neatness and care. The costs of the cause already amount to between seven and eight hundred dollars, and as it must eventually be determined by a jury, upon the question of fact, it is with much reluctance that we feel constrained to reverse the judgment and remand it for another trial.
Among the various questions argued with zeal and ability by the counsel on both sides, there are but two upon which we deem it necessary to announce an opinion.
1. On the 5th November, 1869, the following entry appears to have been made in the Circuit Court of Hardeman, viz.:
“In this cause the Court is pleased to grant the motion of the defendants, supported by the affidavit of *415 M. C. Pearce, N. Berry, John S. Belote and John H. McClellan, asking a change of venue, and orders that the venue o this case be changed to the Circuit Court of Fayette, county, Tennessee, that being the nearest county; and the Clerk is hereby ordered to make out a complete transcript of the record in this cause, and all orders, and forward them forthwith to the Circuit Court of Fayette county, together with all the papers in this cause. To all of which the plaintiff, by his attorney, excepts. And thereupon came the plaintiff, by his attorney, and asked to be allowed to prove that John PI. McClellan, one of the three citizens who support the application of defendants for a change of venue in this cause, is interested in this cause, and the Court refuses to allow the same. To which the plaintiff, by attorney, excepts.”
In obedience to this order, the cause was transferred to the Circuit Court at Somerville, where it was continued from term to term until October Term, 1870, when, as before stated, it was submitted to, and tried by, a jury of Fayette county.
No formal bill of exceptions to the action 'of the Court in ordering the change of venue, was signed and sealed by the Circuit Judge, but we hold that the entry above, made upon the minutes, was a sufficient bill of exceptions, according to the last paragraph of the opinion in Wynne v. Edwards, 7 Hum., 420. But upon the authority of that, as well as several other cases decided by this Court, we hold that the affidavits of Pearce and his several compurgators, which are copied into the transcript, form no part of the record.
*416 The question then is, does the above entry upon the minutes of 5th November, 1869, contain upon its face a sufficient statement of the causes for changing the venue? In the solution of this question, it is not necessary to consider the eighth section of the act of 8 March, 1867, c. 36, p. 57. That section was, probably, passed under the influence of political excitement growing out of the late war, and was repealed by the eighth section of the act of 12 March, 1868, c. 67; pamphlet acts, p. 86. The act of 13 February, 1868, c. 44, p. 52, amendatory to the Code, was repealed by the act of 8 January, 1870, c. 41, p. 79; and the 8th section of the act of 8th March, 1867, was again repealed by section 3 of the act of 3d March, 1870, c. 101, p. 116. The effect of this legislation was to revive the provisions of the Code, under the rule that “if a statute that repeals another is itself afterwards repealed, the first statute is thereby revived, without any formal words for that purpose1 Sharsw., B. 90, and note 35. See also Dwarris on Stat., 7 Law Lib., 675, 676, marg.; Sedgw. on Stat. and Const. Law, 137. So much of the Code as it is necessary to consider, is in the following words: “The party applying for a change of venue shall make a statement of facts, in writing, under oath or affirmation, that he verily believes that, owing to prejudice or other causes then existing, he can not have a fair and impartial trial in the county where the cause is pending; the truth of which statement shall be verified and supported by the oath of at least three respectable and disinterested persons. If the presiding Judge, on due consideration, *417 should be of opinion that the cause set forth is good and the truth thereof evident and credibly supported, he shall allow the change asked for: ” Code, ss. 2837, 2838.
For the purpose of saving expense to the parties, as well as for other causes, the trial by jury which is co-eval with the common law, was intended to be by a jury of the vicinage or county, but in order to secure a fair and impartial trial, where it could not be had in the county, a change of venue was authorized in this State, so early as the act of 1809, c. 49, s. 17: Car. & Nich., 700; 2 Meigs’ Dig., 1021. That act was subsequently' amended by other statutes, the provisions of which were condensed and re-enacted in the Code. These statutes were constructed with some degree of strictness, and it was held that, under their provisions, a cause could not be transferred from one Circuit Court to another because a Judge, from interest or otherwise, was incompetent to try it; and in another case, that where the order for the change of venue directed that the transcript should be sent to the Court to which the case was removed within fifteen days, and this was not done until after that time, the Court to which the cause was intended to be removed did not acquire jurisdiction. See Williams, ex parte, 4 Yerg., 579; McHenry v. Wallen, 2 Yerg., 441. See also Walker v. Snowden, 1 Swan, 193.
So important, as a general rule, is it to litigants that their causes shall be tried in the counties where they reside, that the statute does not allow a change of venue as a matter of right ■ or of course. It can *418 only be done upon a statement of facts in writing under oath, or affirmation, on the part of the applicant, and the truth of his statement is to be verified and supported by the oath of at least three respectable persons, and then not without “due consideration” on the part of the presiding judge. And we hold that in order to meet the requirements of the statute, the record should show not only by whom the affidavit was presented and supported, but should state clearly, that the venue is changed because it appears that the party applying can not have a fair and impartial trial in the county where the cause is pending. It should show not only that the affidavit was made, but that, in the opinion of the Court the cause set forth is good, and the truth thereof evident .and credibly supported by' at least three respectable and disinterested persons. The change of venue is not a matter of arbitrary discretion resting upon some uncontrolable whim, caprice, or possible bias of the judge. It is a judicial act to be performed in the mode prescribed by law and in no other mode; and, if it is alleged that the directions of the statute have not been followed, there is no reason why such action may not be reviewed in' this Court upon appeal, just as the action of the Circuit Court, in rendering a judgment upon motion or in any other case, m@y be reviewed, when properly brought before it, by this Court. This case furnishes a strong illustration of the correctness of the rule just stated. The statute requires that the com-purgators shall be respectable and disinterested, and .seems to contemplate not a mere general assertion that *419 the applicant can not have a fair and impartial trial, but a “statement of facts,” of the truth of which the Court is to judge just as much as it is bound to form a judgment in any other cause. But here, it is clearly shown by the record that the plaintiffs offered to prove that one of the persons whose affidavit was offered in support of the affidavit of defendant was interested, and that the Court refused to allow the testimony. Was it the meaning of the statute that the compurgators should swear to their own respectability and disinterestedness, and that no evidence should be heard on the other side? If so, nothing would be easier than the employment of perjured witnesses and the change of venue from county to county, for an indefinite period, and so as to defeat any trial of the cause. Was it the intention of the Legislature to exclude counter affidavits, as was held in Blackburn v. Hawthorne, 4 Col., 217 ? If so, it is a little remarkable that the statute should require that the truth of .the statement shall be verified, and that the cause set forth is good, and that the compurgators are respectable and disinterested persons. Nothing is said in the statute about counter affidavits. Nothing beyond the requirement that the party applying shall make a statement of facts, in writing or on oath, is contained in it as to the mode of proof. What is there in the statute to prevent the Judge from conducting the investigation in the usual modes? Why may he not examine the compurgators on oath in open Court? Why may ho not permit them to be examined in open Court by the parties or their counsel? He is to be satisfied *420 that the statement of facts is verified and supported by respectable and disinterested persons. How can he determine this without seeing or hearing them, or admitting proof as to their standing and impartiality. Admitting that their own statements, in a written affidavit, or upon oral examination, are to be taken as prima facie evidence of the facts, are these statements more conclusive than any other prima facie statements of witnesses? How is he to know that the cause set forth is good and the truth thereof evident and credibly supported unless he makes inquiry? And how can he investigate the truth unless he hears all pertinent testimony that may be offered on both sides? Is he to change the venue merely because one party asks it and three of his friends swear they think it ought to be done, or is he to examine the reasons assigned for so grave a proceeding as that which implies that twelve honest and impartial men can not be found in an entire county? In this' case it was offered, distinctly and explicitly, to prove that one of the compurgators was not the kind of man designated by the statute, and that so far from being disinterested, he was interested in the cause. To hold that such evidence can be rejected, as it was in this case, is to determine that one of the cardinal requirements of the statute may be dispensed with, and that the compurgators, instead of being disinterested, may have as great an interest in the result of the suit as the parties themselves.
In Blackburn v. Hawthorne, no satisfactory reason is given for excluding counter affidavits; but, in sup *421 port of the position, that the determination of such a question rests exclusively with the Circuit Court, and is purely a matter of legal discretion, reference is made to Gasaway v. Smith, 3 Hum., 154. In that case the venue was changed to another county on application of the defendant, and afterward the plaintiff applied for a change of venue from that county. The ground of his application seems to have been that the defendant and most of his witnesses resided in the county to which the cause had been removed, and that he believed he could not get a fair and impartial trial of bis case in that county. Three other persons stated, in an affidavit, that, from what they had seen and heard, they believed his statements were true. It is said in the opinion, that “the change of venue asked for was refused by the Circuit Court, but whether the refusal took place because of a supposed defect of power on the part of the Court to grant a second change of venue in the same causé, or because the Court was of opinion that the ground stated was not good, or if good, that ■ the truth thereof was not evident and creditably supported, we are unable to learn from the bill of exceptions, which states only that the application was refused.” After quoting the act of 1825, s. 8, which contains a provision similar to that in the Code, it is asked: “How shall we say in such a case that the Circuit Court, when considering of this application, erred in believing the cause assigned not to be good or the truth evident and credibly supported ? There are certainly many things which the discretion of the Circuit Court must determine, and which may *422 be safely left to be determined by it. There, are many things done and transacted there, as to which, from their very nature, the supervision of this Court would be difficult, and could not be made effective. This, we think, is one of them.”
This conclusion of the' opinion is not an absolute and unequivocal determination that this Court can not, in any case, review the action of the Circuit Court in changing, or refusing to change,' the venue, and is to be regarded as applying to the peculiar facts in that case. It treats such action as difficult, and, perhaps, ineffective; and .in Walker v. Snowden, 1 Swan, 193, already cited, the action of the Court, in ordering a change of venue, was reviewed and annulled by this Court, on the ground that the Circuit Court had no authority to transfer the cause under the Act of 1809, by directing that a transcript of the record merely, and not a transcript and the original papers, should be sent to the Circuit Court of the county to which the cause was removed. The case of Blackburn v. Hawthorne, in which Judge Hawkins delivered a dissenting opinion, is, therefore, overruled so far as it declares that affidavits in opposition to a change of venue can not be received; and, except so far as herein otherwise expressed, we concur in the reasoning of the dissenting opinion. See 4 Col., 221, 227. ■ But the practice of receiving counter affidavits, which are generally made ex parte, should not prevail except under very special circumstances. The correct practice is to hear the witnesses for and against the change of venue in open Court, or to cause their depositions *423 to be taken as in other cases. In the case at bar, the offer was to prove that one of the compurgators was interested, and, therefore, not such a witness as the statute requires. It was error to reject this evidence. We hold that, in all such applications, where a proper case is made out by either party, the change of venue is a matter of right, and that the action of the Circuit Courts in ordering or refusing it may, in proper cases, be reviewed by this Court, and .that the better practice in all such cases, is to set out all the evidence in a formal bill of exceptions. In reaching this result, we are not unmindful of the history of jurisprudence in this State sincp the late civil war, and are well satisfied that cases have occurred in which great injury has been done, as well by the change as by the refusal to change the venue, in particular localities.
It results from this view, that the case never was properly in the Circuit Court of Fayette, and must be remanded to the Circuit Court of Hardeman county.
2. This Court would be content to rest its action on this ground alone, but for the fact that our attention has been expressly invited to the following paragraph in his Honor’s charge: “The defendants, however, insist as a defense to this action, that the cotton purchased by them for plaintiffs was burned, or directed to be burned, by the military authorities of the Confederate States, against their consent. If you find from the proof in the case that such is the fact, then it would be your duty to find in favor of the defendants.” This is not a correct statement of the law. *424 The mere fact that the Confederate authorities directed the cotton to be burned, would not exonerate the defendants as agents. Such a direction may have been given and not executed. If the ' defendants were the agents of the plaintiffs, and the care of the cotton was entrusted to them, it is incumbent upon them to show what became. of it. If it was taken out of their possession, or from under their control, by irresistible military authority, and the order to burn it was then given, this would exonerate them, whether executed or not, provided it was out of their power to reclaim it, or peaceably to regain the possession. If they caused it to be removed for safe keeping, or for any other purpose, the burthen of the proof is upon them to show what became of it.
3. It is no answer to this objection that it is shown in the bill of exceptions, that “the charge was not excepted to by either counsel for plaintiffs or defendants.’-’ Neither the consent nor- silence of counsel can make the law; and while the Circuit Courts are not to be put into error by the failure of counsel to ask for appropriate instructions, where the charge is otherwise unobjectionable, yet where actual error occurs in the instructions, of such a nature as to mislead the jury on a material question in the cause, 'it is the duty of this Court, as a reviewing tribunal, to review and correct it, although every intendment, especially after verdict, is in favor of the regularity of the proceedings in the Court below.
4. Other material and important questions have been ■discussed in argument, and there are, perhaps, other *425 'errors in the charge; but we abstain from any determination of them, as the case must ultimately be determined by a jury, upon questions of fact; and we remand it, for their unbiased and untrammeled consideration, without intimating any opinion whatever as to the real merits of the case.
Reverse the judgment and remand the cause to the Circuit Court of Hardeman county, to which the Circuit Court of Fayette will return all the original papers transmitted therein to that Court.